IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUN-SUNG KWAK, by his estate administrator and wife, NAM SOON JEON; and NAM SOON JEON, <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAND COLONY HOTEL, ISLAND COLONY PARTNERS, 445 SEASIDE, INC., AQUA HOTELS AND RESORTS US/CANADA, and DOE BUSINESS ENTITIES 1 through 5, <br><br> Defendants. <br> _____ <br><br> ISLAND COLONY PARTNERS and 445 SEASIDE, INC., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> ASSOCIATION OF APARTMENT OWNERS OF ISLAND COLONY, <br><br> Third-Party Defendants. <br> _____ | CIVIL NO. 11-00015 SOM/BMK <br><br> ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANTS ISLAND COLONY PARTNERS, 445 SEASIDE, INC., AND AQUA HOTELS AND RESORTS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 93; AND (2) THIRD-PARTY DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF ISLAND COLONY'S SUBSTANTIVE JOINDER, ECF NO. 98 |

**ORDER GRANTING IN PART AND DENYING IN PART
(1) DEFENDANTS ISLAND COLONY PARTNERS, 445 SEASIDE, INC., AND
AQUA HOTELS AND RESORTS, LLC'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 93; AND
(2) THIRD-PARTY DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF
ISLAND COLONY'S SUBSTANTIVE JOINDER, ECF NO. 98**

**I.      INTRODUCTION.**

On January 7, 2011, "Plaintiffs Jun Sung Kwak decedent, by his estate representative and wife, Nam Soon Jeon, Su-Min Kwak, Min-Seung Kwak, and Nam Soon Jeon" filed suit against

Defendants Island Colony Hotel, Island Colony Partners, 445 Seaside, Inc., and Aqua Hotels and Resorts US/Canada (collectively, "Defendants").[1]  The Complaint asserts various claims arising out of Kwak's death.  See ECF No. 1 (Jan. 7, 2011).  Island Colony Partners and 445 Seaside, Inc., subsequently filed a Third-Party Complaint against the Association of Apartment Owners of Island Colony.  See ECF No. 10 (Feb. 18, 2011).

On November 14, 2011, Island Colony Partners, 445 Seaside, Inc., and Aqua Hotels and Resorts US/Canada moved for judgment on the pleadings and/or summary judgment.  See ECF No. 93 (Nov. 14, 2011).  On November 21, 2011, the Association of Apartment Owners of Island Colony substantively joined in that Motion.  See ECF No. 98 (Nov. 21, 2011).  The court grants in part and denies in part the Motion and Joinder.  To the extent the decedent, Jun-Sung Kwak, may be asserting claims in his own name, judgment on the pleadings is granted against Plaintiffs, because such claims must be prosecuted by his estate.  The court denies the remainder of the Motion and Joinder, noting that Nam Soon Jeon is properly proceeding as the personal representative of Kwak's estate.  To the extent Plaintiffs seek leave to file an

---

[1] The parties have stipulated to the dismissal of all claims asserted by Kwak's children, Su-Min Kwak and Min-Seung Kwak, with prejudice.  See Stipulation for Dismissal with Prejudice of All Claims of Pls. Su-Min Kwak and Min-Seung Kwak, ECF No. 72.

amended complaint, such a motion is currently before the Magistrate Judge assigned to this case. This court therefore takes no position on that matter and leaves it to the Magistrate Judge to rule on the matter.

**II.     BACKGROUND.**

The Complaint alleges that, on January 10, 2009, Kwak had a cardiac arrest or other impairment while swimming in the pool of the Island Colony Hotel in the City of Honolulu, State of Hawaii. Compl. ¶¶ 10-11, ECF No. 1. Kwak was ultimately pronounced dead on January 13, 2009. Id. ¶ 13.

On or around January 29, 2009, Kwak's wife, Jeon, gave a power of attorney to Jae Nam and the Kimm Law Firm. See Power of Attorney, ECF No. 147-2. The power of attorney allowed Jeon's designee to "investigate, file and pursue all litigation stemming from the death of Jun Sung Kwak, at Island Colony Hotel in Honolulu, Hawaii, USA" and to "handle all related legal matters stemming from the death of Jun Sung Kwak."

On January 7, 2011, the Complaint in this matter was filed. See ECF No. 1. The Complaint alleges that Jeon is Kwak's "estate representative." Id. However, at the time the Complaint was filed, Jeon had not yet filed her Application for Informal Appointment as Personal Representative (Without Will) for the Estate of Jun Sung Kwak ("Application") in the Circuit Court of

the First Circuit, State of Hawaii.  Her Application was filed on January 10, 2011.  See ECF No. 94-9.

Jeon had supposedly signed her Application on December 29, 2010.  It was notarized by Michael Kimm (Plaintiffs' attorney), who attested that Jeon "personally appeared" in front of him and executed the Application.  See ECF No. 94-9.  There is no dispute that Jeon did not actually sign the Application.  Instead, it was signed by Jae Nam under the power of attorney.  See Opposition at 2-3, ECF No. 169 (Jan. 19, 2012); See Declaration of Michael S. Kimm ¶¶ 10-12, ECF No. 170 (Jan. 19, 2012).  Michael Kimm indicated in his declaration that, because Jae Nam signed the document in New Jersey under the power of attorney, Kimm deemed Jeon to have "appeared personally" before him.  Id. ¶¶ 10-11.  Kimm contends that Jeon was therefore in New Jersey under the law, id. ¶ 12, even though she was not physically there.

On January 13, 2011, Jeon was informally appointed personal representative of Kwak's estate.  See Statement of Intestate Informal Appointment of Personal Representative, ECF No. 94-13; Letters of Administration, ECF No. 94-14.  On January 14, 2011, Jeon allegedly accepted the appointment by filing the Acceptance of Appointment with the probate court.  See Acceptance of Appointment, ECF No. 94-15.  The Acceptance of Appointment states that it was signed by Jeon in Englewood, New Jersey.  Id.

4

However, it was Jae Nam, not Jeon, who, pursuant to the power of attorney, actually signed the document. See Declaration of Michael S. Kimm ¶ 16, ECF No. 170 (Jan. 19, 2012).

Defendants argued in this court that the manner in which the probate documents had been signed rendered them invalid, and that Jeon had therefore not been properly appointed as Kwak's personal representative. At the initial February 21, 2012, hearing on the present Motion and Joinder, the court continued the matter to give the parties time to have the probate court decide that issue. See Transcript of Proceedings, ECF No. 220 (filed Feb. 22, 2012). On March 29, 2012, the probate court orally denied a petition to dismiss the probate proceeding or alternatively to revoke Jeon's appointment. See Letter from Archie T. Ikehara to this court, Apr. 4, 2012, ECF No. 260. According to counsel, the probate court did not provide an explanation. Id.

## III.    STANDARD OF REVIEW.

### A.    Judgment On The Pleadings.

Rule 12(c) states, "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir.

5

2011). For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. See Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist., 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be considered as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(d). Courts have held, however, that, when adjudicating a Rule 12(c) motion, courts may consider matters subject to judicial notice without converting the motion to one for summary judgment. See Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice."

(quotations omitted)).  Accord Lacondeguy v. Adapa, 2011 WL 9572, *2 (E.D. Cal. Jan. 3, 2011); Williams v. City of Antioch, 2010 WL 3632199, *2 (N.D. Cal. Sept. 2, 2010).

    **B.    Summary Judgment.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the

ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.     ANALYSIS.**

    **A.   Decedent Kwak May Not Prosecute Claims in His Own Name.**

Defendants first argue that Kwak, a deceased person, cannot be a party to the present lawsuit. The Hawaii Supreme Court has stated:

> The common law principle is that if a party dies before a verdict or decision is rendered, the action abates as to him and must be dismissed unless it is revived by substitution of a personal representative. A deceased person cannot be a party to a legal proceeding, and the effect of death is to suspend the action as to the decedent until his legal representative is substituted as a party. As a general rule, the authority of counsel to proceed with a case is terminated upon the death of the party being represented[.]
>
> Under the provisions of HRS § 663-7, appellant's cause of action was not extinguished by his death, but survived in favor of his "legal representative." As such, only the legal representative was authorized to continue the suit.

Bagalay v. Lahaina Restoration Found., 60 Haw. 125, 135-36, 588 P.2d 416, 423 (1978) (internal citations omitted).

Because Plaintiffs do not contest that Kwak, as a deceased person, cannot be a party to a legal proceeding, the court grants judgment on the pleadings in favor of Defendants, determining that Kwak cannot be a party to this case in his own name.

### B. The Complaint Sufficiently States Claims on Behalf of Kwak's Estate.

Defendants argue that the Complaint does not state any claim or seek any relief on behalf of Kwak's estate. Defendants point to two areas of the Complaint in support of their argument: (1) that the Complaint states that Kwak's wife and children "sue in their own names in connection with the untimely death and loss

of their husband/father, including support, companionship, society, wrongful death and survivorship rights," Compl. ¶ 3, ECF No. 1, and (2) that the prayer for relief only asks for $10 million "to the spouse and children of Jun Sung Kwak." Id. at 8. Plaintiffs do not contest Defendants' arguments, but state that "[t]he simple error in the language of the complaint is a mere technical difficulty that can be corrected in an amended complaint and refiled." Opposition at 9, ECF No. 169.

Although inartfully pled, the Complaint's allegations with respect to Kwak's estate are not fatally defective, as the claims themselves include allegations made on behalf of the estate. For example, Counts 1, 2, and 3 are negligence claims asserting that "Defendants owed a duty of care to Plaintiffs" and that "[a]ll Plaintiffs have been injured by Defendants' acts and omissions." See Compl. ¶¶ 17, 19, 21, ECF No. 1. Plaintiffs' wrongful death claim, Count 4, similarly alleges that "[a]ll Plaintiffs have been injured by Defendants' acts and omissions." Id. ¶ 23. Finally, Plaintiffs' strict liability claim, Count 5, alleges that "Defendants are strictly liable for the damages that Plaintiffs and Plaintiff-Decedent's estate has suffered." Id. ¶ 25.[2] The court notes that the ad damnum clause seeks "any

---

[2] This is the only claim that differentiates between "Plaintiffs" and "Plaintiff-Decedent's estate." The court in any event construes the reference to "Plaintiffs" in Counts 1 to 4 as including Kwak's estate.

other relief the Court deems just and proper under the circumstances." Given the allegations in the individual counts, Defendants are on notice that the Complaint seeks damages on behalf of the estate. In any event, Plaintiffs have moved before the Magistrate Judge for leave to amend their Complaint. If leave is granted, the status of the estate's claim may cease to be an issue. See Motion to Amend the Complaint, ECF No. 151 (Jan. 5, 2012); Notice of Supplemental Motion to Amend Complaint, ECF No. 226 (Feb. 23, 2012).

### C. Jeon's Appointment As Personal Representative Retroactively Validates The Estate's Standing.

Defendants attack Jeon's ability to represent her husband's estate as personal representative. Defendants argue that, because the Complaint was filed on January 7, 2011, but Jeon was not appointed personal representative of the estate until January 13, 2011, she "lacked authority and capacity to file a Complaint on behalf of the estate." Motion at 12, ECF No. 93. Plaintiffs somewhat indirectly argue in opposition that the court should allow them to amend the Complaint and allow relation back to the original Complaint to properly reflect Jeon's representative capacity. See Opposition at 9-10, ECF No. 169. Amendment of the Complaint is unnecessary for purposes of relation back.

Hawaii law specifically provides that any actions taken by a person on behalf of an estate prior to the person's

12

appointment as the estate's personal representative have the same validity as would have applied if the person had been appointed personal representative at the time of the actions:

> The duties and powers of a personal representative commence upon appointment. <u>The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to the person's appointment the same effect as those occurring thereafter.</u> Prior to the person's appointment, a person named executor in a will may carry out written instructions of the decedent relating to the decedent's body, funeral, and burial arrangements. A personal representative may ratify and accept acts on behalf of the estate done by others where the acts would have been proper for a personal representative.

Haw. Rev. Stat. § 560:3-701 (1996) (emphasis added).

This statute is consistent with law from other jurisdictions. See, e.g., Bonvolanta v. Delnor Cmty. Hosp., 413 F. Supp. 2d 906, 910 (N.D. Ill. 2005) ("Under Illinois law, when letters of administration are issued with respect to the decedent's estate, the letters relate back to the time of death."); Graves v. Welborn, 260 N.C. 688, 692, 133 S.E.2d 761, 764 (1963) ("to protect property rights and to protect one who, prior to his appointment, has acted to preserve the estate, it is the universal rule that all previous acts of the personal representative prior to his appointment which were beneficial in nature to the estate and which would have been within the scope of his authority had he been duly qualified, are validated upon

his appointment which relates back to the death of the intestate for this purpose"); Rennie v. Pozzi, 294 Or. 334, 341, 656 P.2d 934, 938 (1982) ("the usual rationale for the relation back of a personal representative's powers is to enable someone to act on behalf of the estate pending appointment. The subsequent appointment 'relates back' in the sense that for all legal purposes the prior act done by the personal representative-to-be on behalf of the estate is deemed to have done by him or her at that time as personal representative with all the normally attendant powers"); Rinke v. Johns-Manville Corp., 47 Wash. App. 222, 229, 734 P.2d 533, 538 (1987) ("the failure to formally appoint Rinke as personal representative was the kind of mistake which merits application of the relation back doctrine").

As the probate court has declined to remove Jeon from her position as Kwak's personal representative, Jeon's power to file suit on behalf of the estate "relate[s] back in time to give [her] acts . . . occurring prior to . . . [her] appointment the same effect as those occurring thereafter." Haw. Rev. Stat. § 560:3-701. In other words, her appointment as personal representative after the filing of the Complaint operates as if she had had personal representative powers when she filed the Complaint. To the extent Defendants move for judgment on the pleadings or summary judgment based on Jeon's alleged lack of authority to file this suit, the Motion and Joinder are denied.

14

The court's refusal to dismiss this action because Jeon became Kwak's personal representative after the Complaint was filed is also consistent with Rule 17(a)(3) of the Federal Rules of Civil Procedure, which states:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

**IV.      FUTURE EVIDENTIARY MATTERS**

To avoid future disputes concerning evidentiary matters that consume court resources and waste the parties' time, money, and energy, the parties are directed to ensure that matters stated as facts in all future filings reflect what actually occurred, not what a party thinks the legal effect is of an act. If, for example, Jae Nam signed the Application in New Jersey under a power of attorney from Jeon, Plaintiffs should not say that Jeon personally signed the Application in New Jersey. Instead, Plaintiffs must accurately state who signed and where the act occurred.

Rule 56(c)(4) of the Federal Rules of Civil Procedure requires declarations and/or affidavits submitted in connection with summary judgment motions to be made on personal knowledge. Under 28 U.S.C. § 1746, an unsworn declaration must also state

15

that the matters asserted therein are true under penalty of perjury.  With respect to the upcoming motions for summary judgment, the parties are ordered to meet and confer concerning the authenticity of exhibits submitted in connection with those motions.  The parties shall, no later than May 24, 2012, submit a stipulation concerning which, if any, exhibits are agreed to as authentic for purposes of the upcoming summary judgment motions.  With respect to any disputed exhibit, the stipulation shall identify the exhibit as well as the party disputing the authenticity and the basis for that dispute.  The court is asking the parties to meet and confer regarding only authenticity, not relevancy or admissibility.  The parties may satisfy the "meet and confer" requirement by meeting in person or by having discussions via the telephone or by videoconference.  It is the court's hope that, given the sheer number of motions and volume of exhibits, the court will not have to spend much time on authenticity issues.

**V.    CONCLUSION.**

For the foregoing reasons, the Motion and Joinder are GRANTED as to claims made by decedent Kwak in his individual capacity.  In all other respects, the Motion and Joinder are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 3, 2012.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Jun-Sung Kwak, by his estate administrator and his wife, Nam Soon Jeon et al. v. Island Colony Hotel et al., Civ. No. 11-00015 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANTS ISLAND COLONY PARTNERS, 445 SEASIDE, INC., AND AQUA HOTELS AND RESORTS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 93; AND (2) THIRD-PARTY DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF ISLAND COLONY'S SUBSTANTIVE JOINDER, ECF NO. 98