IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAM SOON JEON, individually and as Estate administrator of her deceased husband, Jun Sung Kwak, | ) ) ) ) ) | CIVIL NO. 11-00015 SOM/BMK<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PUNITIVE DAMAGE CLAIMS |
| Plaintiff, | ) ) | ASSERTED BY PLAINTIFF IN HER INDIVIDUAL CAPACITY (ECF NO. |
| vs. | ) ) | 345); ORDER DENYING MOTIONS CONCERNING NEGLIGENCE, |
| 445 SEASIDE, INC., and AQUA HOTELS AND RESORTS US/CANADA, | ) ) ) | WRONGFUL DEATH, PUNITIVE DAMAGES, AND PLAINTIFF'S REMAINING CLAIMS (ECF NOS. |
| Defendants. | ) ) | 340-46); ORDER DENYING MOTION BY THE ASSOCIATION OF |
| _____ | ) | APARTMENT OWNERS OF ISLAND COLONY CONCERNING THE CROSS-CLAIM FILED BY 445 SEASIDE (ECF NO. 351) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PUNITIVE DAMAGE CLAIMS ASSERTED BY PLAINTIFF IN HER INDIVIDUAL CAPACITY (ECF NO. 345); ORDER DENYING MOTIONS CONCERNING NEGLIGENCE, WRONGFUL DEATH, PUNITIVE DAMAGES, AND PLAINTIFF'S REMAINING CLAIMS (ECF NOS. 340-46); ORDER DENYING MOTION BY THE ASSOCIATION OF APARTMENT OWNERS OF ISLAND COLONY CONCERNING THE CROSS-CLAIM FILED BY 445 SEASIDE (ECF NO. 351)**

I.        INTRODUCTION.

On January 7, 2011, "Plaintiffs Jun Sung Kwak decedent, by his estate representative and wife, Nam Soon Jeon, Su-Min Kwak, Min-Seung Kwak, and Nam Soon Jeon" filed suit against Defendants Island Colony Hotel, Island Colony Partners, 445 Seaside, Inc., and Aqua Hotels and Resorts US/Canada.  The claims asserted in the original Complaint arose out of Kwak's death by drowning at the Island Colony Hotel.

Defendant 445 Seaside has filed multiple motions for summary judgment.[1]  The court grants the motion for summary judgment with respect to the punitive damage claims asserted by Jeon in her individual capacity.  See ECF No. 345.  However, the court denies the motions concerning negligence, wrongful death, and Jeon's remaining claims, including punitive damage claims asserted on behalf of Kwak's estate.  See ECF Nos. 340-46.  The court also denies the motion by the Association of Apartment Owners of Island Colony ("AOAO") concerning the cross-claim filed by 445 Seaside, ECF No. 351.

II.       **PROCEDURAL HISTORY.**

On March 21, 2011, the Clerk of Court entered default against Defendant Island Colony Hotel.  See ECF No. 27.  The Third Amended Complaint filed in this case, however, clarifies that Island Colony Hotel is not, and never has been, a legal entity.  See Third Amended Complaint ¶ 9, ECF No. 332. Accordingly, no claim is asserted against Island Colony Hotel in the Third Amended Complaint.  See id.

On December 5 and 6, 2011, multiple motions for partial summary judgment were filed by Island Colony Partners and 445

---

[1]The motions are highly repetitive and have the effect, intended or not, of evading court rules limiting the length of memoranda.  The filing of multiple motions, rather than one, has resulted in a logistical nightmare and much wasted time and effort.  Counsel for 445 Seaside should avoid this in future proceedings in this case.

Seaside, Inc., regarding the original Complaint.  See ECF Nos. 102-118.  Joinders were filed regarding these motions by Aqua Hotels and Resorts.

On May 23, 2012, Jeon, individually and in her capacity as the administrator for Kwak's estate, filed an Amended Complaint against Island Colony Partners, 445 Seaside, Inc., and Aqua Hotels and Resorts US/Canada.  See ECF No. 279.

On June 6, 2012, Island Colony Partners and 445 Seaside answered the Amended Complaint and filed a cross-claim against the AOAO.  See ECF No. 303.  They asserted that the AOAO was responsible for maintaining, repairing, and replacing the common elements at the Island Colony Hotel, including the swimming pool. The cross-claim asserts that, if Jeon suffered any injury, that injury was caused by the AOAO's negligence and breaches of its obligations to maintain the common elements.  The cross-claim seeks contribution, indemnification, subrogation, and reimbursement for any damages recovered from Island Colony Partners or 445 Seaside.  See id.

In preparing to address the motions for summary judgment, which the court was treating as applicable to the Amended Complaint, the court became concerned about whether it had diversity jurisdiction.  The court raised the issue with the parties.  See ECF Nos. 295-97.  On July 3, 2012, Island Colony Partners and 445 Seaside filed a motion to dismiss the case based

on a lack of subject matter jurisdiction.  <u>See</u> ECF No. 298.  On
August 31, 2012, that motion was granted.  Plaintiff was given
leave to file a Second Amended Compliant that dropped the party
destroying diversity, Island Colony Partners.  <u>See</u> ECF No. 330.
The court terminated the previously filed motions and joinders in
those motions and gave the parties leave to reinstate the motions
if Jeon amended her pleading.  <u>Id.</u>

On September 5, 2012, Jeon filed a document she called
her "Third Amended Complaint."  <u>See</u> ECF No. 332.  The Third
Amended Complaint alleges that Defendants were responsible for
Kwak's death and asserts four claims: negligent maintenance of
pool facility (Count 1); negligent security (Count 2); negligent
failure to warn (Count 3); and wrongful death (Count 4).  <u>See</u> ECF
No. 1 (Jan. 7, 2011).

On September 17, 2012, 445 Seaside reinstated some of
its previously filed motions.  <u>See</u> ECF Nos. 340-46.  Those
reinstated motions for partial summary judgment, along with the
AOAO's motion to dismiss 445 Seaside's cross-claim, are the
subject of the present order.  To the extent Aqua Hotels and
Resorts previously joined in 445 Seaside's motions, <u>see</u> ECF Nos.
128-29, 130-32, and 136-37, the court deems those joinders to
apply to the motions filed by 445 Seaside that are now before
this court.  Except where the court clearly intends to refer only
to 445 Seaside, references in this order to 445 Seaside are

intended to apply also to Aqua Hotels and Resorts, which acknowledged at the hearing on these motions that 445 Seaside's arguments applied to Aqua Hotels and Resorts.

III.     **FACTUAL BACKGROUND.**

There are five Defendants that have been involved in this case: (1) Island Colony Hotel, (2) Aqua Hotels and Resorts, (3) 445 Seaside (4) Island Colony Partners, (5) and the AOAO.

Island Colony Hotel appears to be the name of a hotel managed by Aqua Hotels and Resorts. See Defendant Aqua Hotels and Resorts, LLC's Answer ¶ 5, ECF No. 23; Third Amended Complaint ¶ 9-10. Default was entered against Island Colony Hotel on March 21, 2011. See ECF No. 27. However, Island Colony Hotel does not actually exist as a legal entity. See Third Amended Complaint, ECF No. 332.

Island Colony Partners is a limited partnership formed to facilitate the use and/or rental of condominium units at the Island Colony Hotel. See Deposition of William Tanaka, Jr. at 7 (Oct. 25, 2011), ECF No. 115-5, Dec. 6, 2011. Owners who have chosen to be a part of the hotel rental program are deemed limited partners in Island Colony Partners. Id. at 6. To avoid defeating diversity, Jeon does not include in the Third Amended Complaint any claim against Island Colony Partners. See ECF No. 332.

The sole general partner of Island Colony Partners is 445 Seaside.  <u>See</u> Deposition of William Tanaka, Jr. at 6 (Oct. 25, 2011), ECF No. 115-5, Dec. 6, 2011.

The AOAO is an organization made up of all owners of the individual condominium units at the Island Colony, including the units participating in the hotel rental program.  The AOAO's restated declaration indicates that it is responsible for matters such as:

> b.   Keeping[ing] all common elements in a strictly clean, orderly and sanitary condition, and observ[ing] and perform[ing] all laws, ordinances, rules and regulations . . . applicable to the common elements or the use thereof.
>
> c.   Well and substantially repair[ing], maintain[ing], amend[ing], and keep[ing] all common elements with all necessary reparations and amendments whatsoever in good order and condition except as otherwise provided herein.

<u>See</u> Island Colony Restated Declaration of Condominium Property Regime ¶ 14, ECF No. 103-3.  Exhibit B to the declaration notes that the term "common elements" includes the swimming pool.  <u>See</u> ECF No. 103-3 ¶ d, PageID No. 649.  The declaration is recorded as Bureau of Conveyance Document No. 96-057032 and filed as Land Court Document No. 2304255.  <u>See</u> ECF No. 103-3.

The AOAO's restated bylaws indicate that the Board of Directors of the AOAO is responsible for all maintenance, repairs, and replacement of the common elements.  <u>See</u> Restated

Bylaws of the Association of Apartment Owners of Island Colony,
Art. V, § 2, ECF No. 103-4.  The bylaws further state that only
the Board of Directors of the AOAO may make additions,
alterations, repairs, or improvements to the common areas.  Id.
Art. V, § 3.  Article I, section 1 of the bylaws defines "common
elements" as "those elements designated in the Declaration."  The
bylaws were recorded in the Bureau of Conveyances as Document No.
96-057033 and filed with the Land Court as Document No. 2304256.
Accordingly, the condominium documents indicate that the swimming
pool in issue is exclusively maintained by the AOAO.  See Tanaka
Depo. at 33-34.  With respect to safety at the swimming pool, the
AOAO did not distinguish between hotel guests and owner
occupants.  See Eastman Depo. at 41, ECF No. 109-8.

       The AOAO also provided security for the hotel.  See
Tanaka Depo. at 34.

       There is no dispute that Kwak was staying at the Island
Colony Hotel.  It is undisputed that, on January 13, 2009, Kwak
went swimming in the hotel pool.  According to a security guard,
Kwak may have had a heart attack and drowned in the hotel's pool.
See Deposition of Robert Bird (Oct. 26, 2011), ECF No. 160-30,
Jan. 13, 2012.

       The Island Colony Hotel Fact Sheet indicates that the
hotel has 740 rooms, with 175 "managed rooms."  See ECF No. 160-
3.  The fact sheet notes that the hotel's facilities include an

Olympic-size swimming pool.  Id.  There were rules for the swimming pool, but it is unclear who was responsible for drafting, communicating, or enforcing those rules.  See Guest Information Book, ECF No. 111-10 at 6 (noting the location of pool, pool hours, and pool rules).  There is no dispute that, at all times relevant to this lawsuit, a sign was posted near the pool gate stating, "WARNING NO LIFE GUARD ON DUTY."  See ECF No. 160-5.  According to 445 Seaside, this sign was intended to prevent trespasses.  See Deposition of Patricia Maher at 55, Oct. 21, 2011, ECF No. 109-7.  Kwak was Korean, and therefore does not appear to have been a native English speaker, but the Third Amended Complaint describes him as having been an English teacher.  See Third Amended Complaint ¶ 14.

There is no dispute that the Island Colony Hotel had no automated external defibrillator ("AED") on the day Kwak drowned; the hotel acquired AEDs after another person drowned in June 2009.  See Deposition of Irving G. Eastman at 63-64, Oct. 27, 2011, ECF No. 109-8.

IV.      **STANDARDS.**

    **A.  Judgment on the Pleadings.**

Rule 12(c) states, "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that

governing a Rule 12(b)(6) motion.  United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false.  See Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  Under Rule 12(c), "Judgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Fleming, 581 F.3d at 925); accord Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist., 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be considered as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(d).  Courts have held, however, that a court adjudicating a Rule 12(c) motion may consider matters subject to judicial notice without converting a motion to one for summary judgment.  See Heliotrope

<u>Gen., Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." (quotations omitted)); <u>accord</u> <u>Lacondequy v. Adapa</u>, 2011 WL 9572, *2 (E.D. Cal. Jan. 3, 2011); <u>Williams v. City of Antioch</u>, 2010 WL 3632199, *2 (N.D. Cal. Sept. 2, 2010).

   **B.   Summary Judgment Standard.**

The summary judgment standard was previously set forth in this court's order of January 29, 2013.  <u>See</u> ECF No. 376. That standard is incorporated here by reference.

**V.    ANALYSIS.**

   **A.   The Court Denies the Motions Seeking Summary Judgment With Respect to the Negligence Claims Asserted in Counts 1 and 2 of the Amended Complaint (ECF Nos. 340-42).**

To prevail on a negligence claim, a plaintiff must prove:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> (2) A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> (3) A reasonably close causal connection between the conduct and the resulting injury[;] and

(4) Actual loss or damage resulting to the interests of another.

Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498-99, 923 P.2d 903, 915-16 (1996) (quoting Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)).

A viable negligence claim requires that a defendant have owed a duty to the plaintiff.  See Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 11, 143 P.3d 1205, 1213 (2006); Janssen v. Am. Haw. Cruises, Inc., 69 Haw. 31, 34, 731 P.2d 163, 34 (1987).  The Hawaii Supreme Court has stated:

> [I]n considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.  Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.  In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the plaintiff's recovery against those which favor limiting the defendant's liability. The question of whether one owes a duty to another must be decided on a case-by-case basis.

Pulawa, 112 Haw. at 12, 143 P.3d at 1214 (quotation marks, citation, and brackets omitted).

The Hawaii Supreme Court has identified several factors relevant to imposing a duty:

> Whether a special relationship exists, the foreseeability of harm to the injured party,

11

the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Id. (quotation marks, citation, and brackets omitted).

A defendant owes a duty of care only "to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." Id. (quotation marks and citations omitted). In this context, the test for foreseeability "'is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.'" Pulawa, 112 Haw. at 12, 143 P.2d at 1214 (quoting Knodle, 69 Haw. at 388, 742 P.2d at 385). Whether a duty exists is a question of law for the court to resolve. Pulawa, 112 Haw. at 13, 143 P.2d at 1215; Janssen, 69 Haw. at 34, 731 P.2d at 34 ("The existence of a duty is a question of law.").

The Hawaii Supreme Court has stated that "an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." Pickard v. City and County of Honolulu, 51 Haw. 134, 135, 452 P.2d 445, 446

12

(1969); accord Steigman v. Outrigger Enterprises, Inc., 126 Haw. 133, 136, 267 P.3d 1238, 1241 (2011).  A hotel owes this duty to a hotel guest.  Bidar v. Amfac, Inc., 66 Haw. 547, 552, 669 P.2d 154, 159 (1983) (holding that a hotel operator had a duty to maintain a bathroom adjoining a hotel room in a reasonably safe condition for the use of the guest).  The Supreme Court for the Territory of Hawaii has stated, "Operators of . . . pools owe a duty of ordinary care in the supervision, construction and maintenance of the pool but are not insurers of the lives of swimmers."  Carreira v. Terr. of Haw., 1954 WL 7975 *3 (Haw. Terr., Apr. 28, 1954).

        The entities in control of or operating Island Colony Hotel therefore owed guests a duty of ordinary care.  In addition, because of the "special relationship" between a hotel and its guests, those entities had a duty to take reasonable action to protect guests from "unreasonable risks of physical harm."  Knodle, 69 Haw. at 386, 742 P.2d at 384.  The problem here, however, is that there is no entity called Island Colony Hotel.  Instead, to varying degrees, Island Colony Partnership, 445 Seaside, Aqua Hotels and Resorts, and the AOAO all played roles in the operation, management, and maintenance of some aspects of the hotel.  The record does not support a conclusion that 445 Seaside or Aqua Hotels and Resorts had absolutely no control over how the AOAO maintained the swimming pool or pool

13

area.  To the extent several entities acting together operated the hotel, they may not all escape liability to Jeon by pointing to each other.  The scope of any duty may turn on the scope of the role a party played, and that scope is not clear.  To the extent 445 Seaside had a role in operating the hotel, it had a duty of reasonable care and a duty to hotel guests consistent with that capacity.  Aqua Hotels and Resorts, as the manager of the hotel, similarly had such duties.  In particular, it is unclear whether and to what extent Aqua Hotels and Resorts had some role with respect to security personnel at the hotel, as indicated at the hearing on these motions.

Whether an obligation to exercise reasonable care is breached is ordinarily a jury question.  See Bidar, 66 Haw. at 552, 669 P.2d at 159.  For that reason, "[o]rdinarily, issues of negligence . . . are not susceptible of summary judgment." Henderson v. Prof'l Coatings Corp, et al., 72 Haw. 387, 400, 819 P.2d 84, 92 (1991).  This is because the duty to use due care "is bounded by the foreseeable range of danger."  Bidar, 66 Haw. at 552, 669 P.2d at 159.  In this context, foreseeability is different from foreseeability for purposes of determining whether there is a duty.  In the context of breach of duty and of causation, foreseeability is a question of fact for the jury to decide.  See Pulawa, 112 Haw. at 13, 143 P.2d at 1215.  In other words, "what is reasonable and unreasonable and whether the

14

defendant's conduct was reasonable in the circumstances are for the jury to decide." Knodle, 69 Haw. at 387, 742 P.2d at 384. Only when facts are undisputed or lend themselves to only one reasonable interpretation or conclusion may a court decide the question of negligence as a matter of law. Henderson, 72 Haw. at 400, 819 P.2d at 92.

Whether any of the sued parties breached a duty of ordinary care or a duty to take reasonable action to protect guests from unreasonable risks of physical harm under the particular circumstances of this case involves question of facts for the jury to decide. Accordingly, to the extent 445 Seaside argues that it was not negligent in failing to have an AED, ECF No. 340, or to have a lifeguard or pool-side emergency phone, ECF No. 341, or to monitor security cameras, ECF No. 342, the motions are denied. These are circumstances for the jury to consider in determining whether there was a breach of the duty of ordinary care or of the duty to protect guests from unreasonable risks of physical harm. The court does not view the specific failures set forth above as themselves actionable duties.

In breaking down the concept of duty into specific failures, 445 Seaside isolates each alleged failure and thereby attempts to minimize its duties. What is lacking when one isolates each circumstance is consideration of how circumstances interact. That is, even if no statute, ordinance, or regulation

requires a hotel to have a lifeguard, it is not the case that a failure to have a lifeguard never constitutes negligence.  The duty to exercise reasonable care is a common law doctrine that does not operate so absolutely or categorically.  The duty is broader than one specific circumstance.  Even if liability turns on the specific circumstances identified by Jeon, those circumstances may interact, so that one alleged failure may affect the import of another alleged failure.  This court is certainly not announcing here that a hotel must always have a lifeguard on duty or an AED on site.  The court is instead saying that the movants do not establish the absence of factual questions under the totality of the circumstances.  They do not, in fact, even address the totality, having isolated each alleged failure.

The court is unpersuaded by the argument that 445 Seaside and Aqua Hotels and Resorts owed no duty to Kwak because the AOAO was allegedly the party with the exclusive responsibility for maintaining and repairing the common elements, including the swimming pool.  Island Colony Partners was organized to facilitate the rental of condominium units as part of the "Island Colony Hotel."  Island Colony Partners' general partner was 445 Seaside.  Aqua Hotels and Resorts managed the hotel, which was advertised as having an Olympic-size pool.  Both 445 Seaside and Aqua Hotels and Resorts therefore were involved

with running a hotel.  Entities that run a hotel owe guests of the hotel a duty of ordinary care and a duty to take reasonable actions to protect the guests from "unreasonable risks of physical harm."  Neither 445 Seaside nor Aqua Hotels and Resorts can delegate those duties to the AOAO so as to relieve themselves of liability for any negligence with respect to a hotel guest. See Stott v. Churchill, 36 N.Y.S. 476, 477 (1895) (holding that a hotel could not delegate its duty of ordinary care to another so as to relieve the hotel from liability for the nonperformance of the duty).  See generally Restatement (Second) of Torts § 425 ("One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands.").

        To the extent 445 Seaside and Aqua Hotels and Resorts are found liable, the AOAO may or may not have to indemnify those Defendants.  But the AOAO's agreement to maintain and operate the pool in which Kwak drowned does not mean that 445 Seaside and Aqua Hotels and Resorts owed no duty to Kwak as hotel owners, operators, or managers.

17

As 445 Seaside noted at the hearing, it may well be
that 445 Seaside did not owe Kwak a duty as a landowner, as the
swimming pool may have been owned by the AOAO.  See Tanaka Depo.
at 13, ECF No. 103-5.  However, even if not a landowner, 445
Seaside owed Kwak a duty based on its role in the operation or
management of a hotel that had a swimming pool for its guests,
even if that swimming pool was owned by the AOAO.  See Hotel Fact
Sheet, ECF No. 160-3 (noting that the Island Colony Hotel had an
"[O]lympic size swimming pool"); Guest Information Book, ECF No.
111-10 at 6 (stating location of pool, pool hours, and pool
rules).  See Yi v. Pleasant Travel Service, Inc., 2012 WL
5987557, *8 (D. Haw. Nov. 28, 2012) (noting that whether a hotel
had an affirmative obligation to have a lifeguard at a pool and
whether its failure to do so constituted an unreasonable risk of
harm were questions of fact that precluded summary judgement).

**B.   The Court Denies the Motion Seeking Summary
       Judgment With Respect to the Negligent Failure to
       Warn Claim Asserted in Count 3 of the Amended
       Complaint (ECF No. 343).**

Count Three of the Amended Complaint asserts that
Defendants negligently failed to warn Kwak that the swimming pool
was dangerous.  Under Hawaii law, an occupier of land has a duty
to warn people using the land of any condition that "poses an
unreasonable risk of harm," if the occupier "knows, or should
have known of the unreasonable risk."  Corbett v. Assoc. of
Apartment Owners of Bayview Apartments, 70 Haw. 415, 417, 772

18

P.2d 693, 695 (Haw. 1989).  Jeon appears to be arguing that the swimming pool posed an unreasonable risk of harm and that Defendants failed to adequately warn Kwak of that risk.

This court rejects 445 Seaside's argument that, because it did not own the swimming pool in which Kwak drowned, it owed no duty to Kwak to warn him of an unreasonable risk of harm. Section 40 of the Restatement (Third) of Torts notes, "An actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship."  In relevant part, it states that a special relationship may arise between "a business or other possessor of land that holds its premises open to the public" and "those who are lawfully on the premises."  Id.

As noted in section 342 of the Restatement (Second) of Torts, a "possessor of land" may be liable for physical harm caused to licensees by a condition on the land if the "possessor of land" fails to warn of the conditions and risk.

There is a question of fact as to whether and to what extent 445 Seaside "possessed" the swimming pool, even if 445 Seaside did not own the pool.  See Restatement (Second) of Torts § 328E ("A possessor of land is . . . a person who is in occupation of the land with intent to control it").  Hotel guests apparently all had access to the gated pool in this case, and there were pool rules.  See ECF No. 111-10 at 6.  There is a

19

question of fact as to what, if any, direct or indirect control 445 Seaside had with respect to such rules and to security personnel who may have monitored the area or issued warnings.

A sign in the swimming pool area stated: "WARNING NO LIFEGUARD ON DUTY." <u>See</u> ECF Nos. 111-8; 160-5. According to 445 Seaside, this sign complied with the applicable building code. <u>See</u> Rev. Ord. of Honolulu § 16-7.7(c).[2] Relying on the existence of the sign, 445 Seaside says it did not breach any duty to warn. It contends that it had no duty to post a warning sign at the pool in any language other than English.

Whether a sign in Korean should have been posted is a matter that goes to the reasonableness of the warning. In other words, assuming that a hotel swimming pool is an unreasonable risk that triggers a duty to warn, what signage satisfies that duty cannot be determined on the present record. Compliance with a building code is a minimal requirement but does not necessarily establish the reasonableness of the warning given.

On the current record, the court cannot say that 445 Seaside has demonstrated the absence of any genuine issue of material fact as to whether it breached a duty to warn Kwak. What, if any, control 445 Seaside exercised over signage is far

---

[2]Section 16-7.7(c) states: "Where no lifeguard is provided, a warning sign shall be placed in plain view and shall state 'Warning--No Lifeguard on Duty' with letters at least four inches high."

from clear.  Nor can this court conclude that signage only in English was reasonable.

Although Kwak was an English teacher and there appears to be no Hawaii law requiring a warning sign in any language other than English, a juror could nonetheless determine that Defendants had to post a warning sign in Korean to satisfy their duty.  Whether such a duty to warn exists turns on the facts of the specific case.  If, for example, a hotel catered exclusively to non-English speaking Korean tourists, a jury might reasonably determine that the absence of signs in both Korean and English was a breach of the duty to warn.  Those specific facts are not before this court, but whether the duty to warn Kwak was breached by the existing sign can only be determined in light of all the circumstances.

The court is not persuaded by 445 Seaside's citation to Farias v. Mr. Heater, Inc., 757 F. Supp. 2d 1284 (S.D. Fla. 2010), Medina v. Louisville Ladder, Inc., 496 F. Supp. 2d 1324 (M.D. Fla. 2007), and Ramirez v. Plough, Inc., 25 Cal. Rptr. 2d 97 (Cal. 1993), as those cases did not apply Hawaii law and are not controlling here.  The summary judgment motion regarding Count 3, ECF No. 343, is therefore denied.

C.   **The Court Denies the Motion Seeking Summary Judgment With Respect to the Wrongful Death Claim Asserted in Count 4 (ECF No. 344).**

The Third Amended Complaint asserts in Count 4 that Defendants caused Kwak's wrongful death.  Hawaii law permits a surviving spouse and a deceased person's legal representative to "maintain an action against the person causing the death or against the person responsible for the death" when that death is "caused by the wrongful act, neglect, or default of any person." Haw. Rev. Stat. § 663-3.

The court is not persuaded by 445 Seaside's first argument that judgment on the pleadings is warranted on the ground that the Third Amended Complaint fails to allege that Defendants engaged in any conduct that caused Kwak's death.  All of the claims, including Count 4, allege that Kwak and Jeon were injured by Defendants' acts and omissions.  Third Amd. Compl. ¶¶ 23, 25, 27, and 29.  Count 4 incorporates previous paragraphs by reference.  Those previous paragraphs include allegations identifying Defendants' acts and omissions as, among other things, the failure to have an AED and a security procedure for monitoring the pool, the failure to inform hotel guests about safety issues, and the failure to advise hotel guests that they might die without assistance if they suffered a medical emergency at the pool.  Id. ¶ 21.  The Third Amended Complaint also alleges that Defendants failed to provide Kwak with any assistance,

failed to have procedures in place for the hotel staff to provide
emergency assistance to guests, and failed to have security staff
monitor the pool.  Id. ¶ 18.  These allegations are sufficient to
support a wrongful death claim.

Consistent with the approach it has taken with other
claims, 445 Seaside argues that it is entitled to summary
judgment on Count 4 because it had no duty to maintain the
swimming pool.  For the reasons discussed earlier in this order,
the court concludes that there are questions of fact going to
what, if any, control 445 Seaside exercised over the swimming
pool or the subjects of the alleged failures.  Any duty turns on
that control.  Neither judgment on the pleadings nor summary
judgment is warranted as to Count 4, and 445 Seaside's motion,
ECF No. 344, is denied.

> ### D. The Court Denies the Motion Seeking Summary Judgment is With Respect to Plaintiffs' Request for Punitive Damages (ECF No. 345).

The Third Amended Complaint includes a prayer for
punitive damages, which 445 Seaside argues cannot be sustained
under the facts of this case.  A question of fact as to whether
punitive damages are appropriate under the circumstances
presented here precludes summary judgment.

Punitive damages are "assessed in addition to
compensatory damages for the purpose of punishing the defendant
for aggravated or outrageous misconduct and to deter the

23

defendant and others from similar conduct in the future." Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989). "In determining whether an award of punitive damages is appropriate, the inquiry focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his conduct." Id. at 7, 780 P.2d at 570.

To recover punitive damages a plaintiff must prove by clear and convincing evidence that a defendant "acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Ass'n of Apartment Owners v. Venture 15, Inc., 115 Haw. 232, 297, 167 P.3d 225, 290 (2007) (quoting Masaki, 71 Haw. at 16-17, 780 P.2d at 575)). "'Punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment.'" Id. (quoting Masaki, 71 Haw. at 7, 780 P.2d at 571) (emphasis omitted). "'[S]omething more' than mere commission of a tort is required to justify the imposition of punitive damages." Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 134, 920 P.2d 334, 348 (1996) (quoting Masaki, 71 Haw. at 12, 780 P.2d at 573).

According to 445 Seaside, the negligence alleged is insufficient to support punitive damages. Jeon counters with two reports from expert witnesses who opine that punitive damages

24

are warranted.  See Omnibus Decl. of Michael S. Kimm Exs. 20, 21, ECF No. 160.  This court is not persuaded by Jeon's citation to experts.  First, an expert's opinion is a conclusion based on facts told to the expert, not necessarily the actual facts. Second, the issue of whether punitive damages are warranted may fall outside the usual realm of expert opinion.  But even disregarding those opinions, this court rejects 445 Seaside's contention at this point.  Punitive damages will turn on the degree of negligence, and that degree is not determinable at this point.  The court leaves for the jury the issue of whether Defendants acted wantonly, oppressively, with malice, or with an entire want of care raising a presumption conscious indifference under the circumstances of this case.  Jeon's evidence of such conduct appears extremely weak, but it is enough to survive 445 Seaside's attempt to eliminate the claim for punitive damages from this lawsuit.

**E.   The Court Grants in Part and Denies In Part the Motion Seeking Summary Judgment With Respect to Jeon's Claims (ECF No. 346).**

Among the many matters before the court is one matter that appears to be uncontested in part.  That matter concerns part of Jeon's wrongful death claim under section 663-3 of Hawaii Revised Statutes.  The law is clear that, in her individual capacity, Jeon may not seek punitive damages under section 663-3. However, as acknowledged by 445 Seaside at the hearing, in her

capacity as administrator of Kwak's estate, Jeon may seek

punitive damages under section 663-7 of Hawaii Revised Statutes.

See Ozaki v. Ass'n of Apartment Owners of Discovery Bay, 87 Haw.

273, 289, 954 P.2d 652, 668 (Ct. App. 1998) ("had she survived,

Cynthia would have had a claim for punitive damages.

Accordingly, under HRS  § 663-7, Cynthia's claim for punitive

damages survived her death. . . .  Likewise, because of our

holding . . . that a cause of action for punitive damages

survives the death of the decedent, punitive damages are not

recoverable in an action under HRS § 663-3.  Furthermore, an

award under HRS § 663-3 would constitute a double recovery."),

reversed in part on other grounds, 87 Haw. 265, 954 P.2d 644

(1998).

An additional argument raised by 445 Seaside with

respect to the wrongful death claim concerns damages for loss of

income with respect to Jeon's individual wrongful death claim.

According to 445 Seaside, Jeon's attorney "admitted" at Jeon's

deposition that she is not seeking such damages based on loss of

income.  The court discerns no such admission.  Instead, it

appears to the court that Jeon's attorney represented that Jeon

was not seeking to recover any diminution in her own income that

flowed from Kwak's death.  Deposition of Nam Soon Jeon at 65:2-3,

ECF No. 118-3.  Jeon's attorney indicated that Jeon was, however,

seeking recovery for the loss of her husband's income.  Id. at

64:18-21.  Recovery of damages based on Kwak's lost earnings is permitted under the wrongful death statute.  See Hudson v. Uwekoolani, 65 Haw. 468, 471, 653 P.2d 783, 786 (Haw. 1982) ("Damages for wrongful death . . . include damages based on loss of future earnings." (citing Haw. Rev. Stat. § 663-8)).

Given the above, this court grants summary judgment to 445 Seaside to the extent Jeon sought punitive damages in her individual capacity, and denies summary judgment in all other respects with respect to the wrongful death claim.

### F.   The Court Denies the AOAO's Motion As to the Cross-claim by 445 Seaside.

The AOAO seeks dismissal or summary judgment on all claims asserted in 445 Seaside's cross-claim.  See ECF No. 351. The AOAO's motion is denied.

Rule 13(g) of the Federal Rules of Civil Procedure, which governs cross-claims, states:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.  The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Cross-claims between parties may therefore seek claims of contribution and indemnity.  See 6 Charles Alan Wright, Arthur R.

Miller, and Mary Kay Kane, Fed. Practice & Procedure, § 1431 (2010).

The AOAO initially seeks dismissal of the cross-claim on the ground that it fails to state a claim upon which relief can be granted.  The court is unpersuaded.  The cross-claim filed by 445 Seaside against the AOAO, ECF No. 303, asserts that, pursuant to the AOAO's Restated Declaration of Condominium Property Regime, the AOAO was responsible for keeping all common elements, including the pool, in a "strictly clean, orderly and sanitary condition," as well as for maintaining, repairing, and replacing those common elements to keep them "in good order and condition."  Cross-claim ¶ 7.  The cross-claim further alleges that the AOAO's bylaws require that "all maintenance, repairs and replacement of the common elements (including the swimming pool . . . ) shall be made only by or at the direction of the" AOAO's Board of Directors.  Id. ¶ 8.  According to the cross-claim, if Jeon suffered any injury, that injury was caused by the AOAO's negligence and breaches by the AOAO of its obligations to maintain the common elements.  Id. ¶ 8.  The cross-claim therefore asserts that Kwak's death may have been caused by the wrongful acts of the AOAO and seeks indemnification, contribution, subrogation and/or reimbursement for any damages Jeon may recover from 445 Seaside.  See id. ¶¶ 9-10.

28

As the AOAO notes, the Third Amended Complaint alleges that 445 Seaside was negligent in having failed to provide security staff to monitor the pool and in having failed to have proper signage, a lifeguard, a telephone, and an AED at the pool. Because these allegations arguably concern the maintenance, repair, or replacement of the common elements to keep them "in good order and condition," 445 Seaside may be able to establish that the AOAO is liable to it for all or part of any judgment Jeon may obtain against 445 Seaside.

Nor is the court persuaded by the AOAO's argument that 445 Seaside's cross-claim against the AOAO should be dismissed because the AOAO owed no duty to Kwak, and because any direct claims asserted against the AOAO by Jeon are untimely.  Whether the AOAO has direct liability to Jeon is irrelevant to whether the AOAO is liable to 445 Seaside for all or part of any judgment against 445 Seaside.

The court is similarly unpersuaded by the AOAO's argument that it is relieved of any liability to 445 Seaside under Hawaii's Recreational Use Statute ("HRUS").  Chapter 520 of Hawaii Revised Statutes limits a landowner's liability to members of the public using the land for recreational purposes.  The purpose of the statute "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering

29

thereon for such purposes."  Haw. Rev. Stat. § 520-1; <u>see also</u>
<u>Thompson v. Kyo-Ya Co.</u>, 112 Haw. 472, 479, 146 P.3d 1049, 1056
(2006) (noting that, in enacting the HRUS statute, the
legislature found that "encouraging the public to engage in
recreational activities makes for healthier citizens and allows
everyone to enjoy Hawaii's natural resources").

Section 520-3 of Hawaii Revised Statutes provides,

> [A]n owner of land owes no duty of care to
> keep the premises safe for entry or use by
> others for recreational purposes, or to give
> any warning of a dangerous condition, use,
> structure, or activity on such premises to
> persons entering for such purposes . . . .

Haw. Rev. Stat. § 520-3.  With an exception irrelevant here,
section 520-4(a) similarly provides:

> an owner of land who either directly or
> indirectly invites or permits without charge
> any person to use the property for
> recreational purposes does not:
>
> (1) Extend any assurance that the premises
> are safe for any purpose;
>
> (2) Confer upon the person the legal status
> of an invitee or licensee to whom a duty of
> care is owed;
>
> (3) Assume responsibility for, or incur
> liability for, any injury to person or
> property caused by an act of omission or
> commission of such persons; and
>
> (4) Assume responsibility for, or incur
> liability for, any injury to person or
> persons who enter the premises in response to
> an injured recreational user.

In <u>Thompson</u>, the Hawaii Supreme Court recognized that, "[i]n most suits where a HRUS defense has been invoked, the question whether a party is a recreational user has been outcome-dispositive." <u>Id.</u> at 476.  HRUS defines a "recreational user" as "any person who is on or about the premises that the owner of land either directly or indirectly invites or permits, without charge, entry onto the property for recreational purposes." Haw. Rev. Stat. § 520-2.  "Recreational purpose" is broadly defined to encompass swimming and other water-related activities. § 520-2.  "Charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land."

The HRUS clearly limits the liability landowners have to individuals injured on premises.  The AOAO does not show that the HRUS controls, bars, or limits claims for contribution or indemnity brought by an entity that is not itself physically injured.  Even if the HRUS does apply to claims by entities without bodily injuries, the HRUS does not bar such claims if they arise out of claims by paying hotel guests.  The problem with the AOAO's reliance on chapter 520 is that this case does not involve anyone who qualifies as a "recreational user."

In <u>Crichfield v. Grand Wailea Co.</u>, 93 Haw. 477, 6 P.3d 349 (2000), the Hawaii Supreme Court recognized that HRUS immunity does not apply to claims by persons "charged" for the

right to be present on certain premises.  Crichfield involved a plaintiff that fell and injured herself while visiting the Grand Wailea Resort.  Id. at 479, 6 P.3d at 351.  Although she was not a registered guest at the resort, she alleged that she intended to have lunch there following her tour of the grounds.  Id. at 482, 6 P.3d at 354.  She argued that she was on the premises for a commercial purpose, and was not a "recreational user" for purposes of the hotel's asserted HRUS immunity defense.  See id. at 486-87, 6 P.3d at 358-59.  The Hawaii Supreme Court held that Crichfield raised a genuine issue of material fact as to whether she was on the hotel grounds for a nonrecreational purpose, which would take the claim out of the scope of the immunity offered by chapter 520.  Id. at 489, 6 P.3d 361.

If eating at a hotel restaurant could be nonrecreational, it stands to reason that renting a hotel room must be nonrecreational.  In that event, Kwak was not a "recreational user" of the swimming pool for purposes of the HRUS.  Although the AOAO did not directly charge hotel guests to use the swimming pool, there is no dispute that hotel guests paid room charges and that pool use was an amenity that came with the hotel room.  The AOAO provides no authority for its contention that it can insulate itself from liability by failing to charge a fee tied directly to the swimming pool, especially when the AOAO's condominium documents contemplate that the condominium

32

project would include a hotel.  See Island Colony Restated Declaration of Condominium Property Regime ¶ 10, ECF No. 103-3. The AOAO is not akin to a landowner with no idea that guests were using its pool.  It expressly contemplated use of the pool by paying hotel guests.  Hotel guests who paid to stay at the hotel were being "charged" for hotel amenities through room charges, and the HRUS is therefore inapplicable.

Given Crichfield, 93 Haw. 477, 6 P.3d 349, the court is unpersuaded by the AOAO's citation of earlier out-of-district case law.  See, e.g., Budde v. United States, 797 F. Supp. 731 (N.D. Iowa E. Div. 1991).

The court is also unpersuaded by the AOAO's argument that, because maintenance fees were charged to condominium unit owners regardless of whether those owners rented out their units to hotel guests, the room charges have no relation to the cost of maintaining the swimming pool.  But room charges were not set with charity in mind.  The condominium unit owners were engaged in a for-profit endeavor when they rented out their units as hotel rooms.  Even if room charges did not entirely cover mortgage costs and maintenance fees, the room charge was surely set to maximize income.  In that event, maintenance fees played a part in the setting of room charges.

Section 520-4 speaks to use of land "without charge." It does not say that the HRUS applies when a charge is imposed

33

but that charge is included in a larger fee.  Moreover, applying the HRUS to the gated pool in this case would in no way further the statutory purpose of encouraging "owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."  Haw. Rev. Stat. § 520-1.  Hotels need no such encouragement.  They have amenities like pools for business reasons, and the HRUS does not cause them to invite the general public to use their pools.  The swimming pool here was gated, not open to the general public without regard to status as a guest or as a guest of a guest.  In this respect, Kwak's use of the swimming pool at issue is akin to pool use by a person visiting another person's house.  Immunity under the HRUS would be inapplicable to that use.  See Haw. Rev. Stat. § 520-5(3) (excepting limitation of liability to "house guests").

As the Hawaii Supreme Court has recognized, the "HRUS was not intended to have created . . . a universal defense available . . . against any and all liability for personal injury," and traditional duties owed by landowners to non-recreational users remain intact.  Thompson, 112 Haw. at 479; see also Crichfield, 93 Haw. at 488 (noting that, when enacting the statute, the legislature stated, "This bill would not affect the landowners' common law duty of care towards . . . business invitees").

In ruling that the HRUS does not immunize the AOAO from the cross-claims of 445 Seaside, the court recognizes that courts have applied the HRUS to bar claims for injuries at swimming pools.  In <u>Palmer v. United States</u>, 945 F.2d 1134, 1136 (9th Cir. 1991), for example, the Ninth Circuit ruled that the HRUS immunized the federal government from a slip and fall claim arising out of a person's free-of-charge recreational use of the area around a swimming pool.  The Ninth Circuit examined the HRUS because, under the Federal Tort Claims Act, the federal government's liability is the same as that of a private party. "Thus, if the HRUS would shield a private party in the government's position," the HRUS protected the government.  <u>Id.</u> at 1135.  Palmer was visiting the pool area at Tripler Army Medical Center in Honolulu.  His grandchildren were allowed to use the pool because their mother worked at Tripler.  Palmer was permitted to accompany his grandchildren to the pool area, and he slipped on nearby stairs.  <u>Palmer</u> is distinguishable from this case.  First, Kwak was a hotel guest who paid for his room and its accompanying amenities, including the pool.  Second, the claim against the AOAO is a claim for contribution or indemnification made by 445 Seaside, not a party that sustained a bodily injury.

V.        **CONCLUSION.**

The court grants the motion for summary judgment with respect to Jeon's personal claims for punitive damages, and notes that Jeon has no claim for loss of her own income.  <u>See</u> ECF No. 345.  In all other respects, the court denies the motions.  <u>See</u> ECF Nos. 340-46 and 351.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2013.



<u>/s/ Susan Oki Mollway      </u>
Susan Oki Mollway
Chief United States District Judge

<u>Jeon v. Island Colony Partners</u>, Civ. No. 11-00015 SOM/BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PUNITIVE DAMAGE CLAIMS ASSERTED BY PLAINTIFF IN HER INDIVIDUAL CAPACITY (ECF NO. 345); ORDER DENYING MOTIONS CONCERNING NEGLIGENCE, WRONGFUL DEATH, PUNITIVE DAMAGES, AND PLAINTIFF'S REMAINING CLAIMS (ECF NOS. 340-46); ORDER DENYING MOTION BY THE ASSOCIATION OF APARTMENT OWNERS OF ISLAND COLONY CONCERNING THE CROSS-CLAIM FILED BY 445 SEASIDE (ECF NO. 351)